TATE, Judge.
Sylvester Thompson, plaintiff-appellant, appealed from judgment after trial dismissing his suit for workmen’s compensation.
It is undenied that on May S, 19S3, Thompson’s feet were burned by hot aluminum ore in the course of his employment with Kaiser Metal Products, Inc. (hereinafter called “Kaiser”), defendant-appel-lee. At the time of the accident, Thompson was employed as area foreman of (or as a) steamfitter(s) at $3.25 per hour at Kaiser’s Baton Rouge plant.
Although Thompson received medical treatment on May 5th, he continued working until June 8, 1953, when he was hospitalized. Skin grafts were performed because the chemical burns on the side of his right foot had not -healed. Thompson returned to work and worked 'for Kaiser without time -lost between July 14, 1953, and October -12, 1953, when he quit. From October 13, 1953, to February 14, 1954 (except for 2-3 weeks during January) he worked for another employer as steamfitter at a wage of $2.75-2.90 per hour.
The only question presented for review is that of Thompson’s disability and extent thereof, if any.
Thompson contends that he suffers considerable pain on walking or climbing and is afraid to climb for fear his foot will .give way. Since therefore he cannot perform the duties of his trade as steamfitter, he contends he is disabled within the meaning of our compensation act. .For it is of course well settled that a claimant is disabled if he can only with pain and suffering perform the duties of the employment in which engaged at the time of the accident; Stieffel v. Valentine Sugars, Inc., 188 La. 1091, 179 So. 6; Newsom v. Caldwell & McCann, La.App., 1 Cir., 51 So.2d 393.
Dr. Louis Mayer, general practitioner and company physician, testifying on behalf of defendant, .had treated Thompson immediately following the burn in May, 1953, had performed the skin graft in the following month, and had discharged Thompson as able to work on July 14, 1953. Based on his re-examinations of October 12, 1953, and April 20th, 1954 (date of trial), Dr. Mayer testified that the residual scars represented merely a non-disabling cosmetic impairment. Although he felt that Thompson’s foot might be slightly more sensitive than normal skin, in this witness’ opinion Thompson could use his feet for the same purposes and in the same way he used them prior to the burns.
Medical witnesses called on behalf of plaintiff were: Dr. Henry Jolly, dermatologist, who examined Thompson in November, 1953, and at' the trial; and Dr. William Moody, general practitioner, who examined Thompson on April 15,' 1954, and again at the trial a few days later.
*435 Dr. Jolly' found no functional disability in Thompson’s feet. However, since the scar from skin graft was still red, in Dr. Jolly’s opinion it was not completely healed and would be a little more sensitive than normal skin. He declined to estimate Thompson’s disability by percentage, stating it was a matter of precaution in wearing well-fitting- soft shoes and avoiding sock-wrinkles to avoid discomfort.
Dr. Moody testified that at the place of the skin graft scars on the right side of the right foot, Thompson would experience hypesthesis. He stated: “In other words, what would be.a touch to us-would be a soreness or painful to him.” In his opinion, Thompson would be uncomfortable' if required to do considerable walking or climbing, but would not suffer any great or ex-crutiating pain.' In his further opinion, this uncomfortable feeling and the'hypes-'thesia would disappear within three to four months. Based, upon his. opinion that "Thompson suffered pain as stated by plaintiff, Dr. Moody felt Thompson was 20 per cent temporarily disabled, in that a person working with pain such as a toothache or earache is riot totally disabled, but .his efficiency to perform the work is impaired.
The only lay testimony produced was that of plaintiff himself and of Charles Hargroder, who worked with plaintiff at the time of the accident and thereafter until October, 1953, when both men. ceased working for Kaiser. (Even if Hargroder’s testimony proved disability during this period, which we will not pass upon, then accepting it Kaiser would have satisfied its compensation liability by payment of full wages as a gratuity.) Thompson did riot produce any lay witnesses whatsoever concerning his alleged inability in. performing his duties subsequent "to his employment with Kaiser, or concerning the alleged assistance of. his co-employees in performing his duties for him while he drew full pay.
Thus the medical evidence, viewed in its strongest light' for the injured employee, indicates a temporary condition of greater sensitivity on the right side of the right foot — the degree’ of discomfort re-srilting from, pressure dependent upon the individual’s threshold of pain, . The evidence does not indicate this to be a permanent impairment or loss of function which might be compensable (although non-disabling) under LSA-R.S. 23:1221(4). It would therefore appear that if compensation is to be allowed, it must be on the principle that the effects of the injury were disabling subsequent to the period for which compensation liability was discharged.
Essentially plaintiff’s right to compensation hinges on whether he suffers appreciable pain in the performance of the duties of a steamfitter, so as to be considered totally or partially disabled. (As urged by plaintiff, even though at the time of the accident temporarily engaged as an area supervisor with less .strenuous duties as part of his employment in the general trade of steamfitter, nevertheless the test of disability would not only be whether the injured employee could perform the temporary lighter duties assigned to him at the time of the accident, but also the general duties of the trade or occupation of steamfitter in which employed at the tirrie of the accident.) Thompson testified that caustic soda or aluminum ore lay on the floors on which employees at Kaiser’s plant had to travel, but it would appear that whether plaintiff’s foot was slightly more sensitive ■ than a normal foot or not, in either event protection to his foot would be required before he could travel in. such areas.
Had the trial court found that plaintiff’s own testimony, together with the medical evidence in the record indicating the medical possibility thereof, proved that the .plaintiff wás through a painful condition of his feet totally or partially disabled to perform the work of steamfitter or area .supervisor thereof, we do not feel that such determination would have been manifestly erroneous, even lacking the lay witnesses to corroborate Thompson’s testimony that he is unable to perform his duties without the assistance of his fellow .employees or without great pain and discomfort. Similarly, we are unable to hold that the District Court’s ■ conclusion -was erroneous ■ that *436 plaintiff has failed to prove any disability by a preponderance of the evidence.
For the reasons above assigned, the District Court’s judgment is affirmed at appellant’s cost.
Affirmed.